IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT A. STOWMAN, JR., et al.  ) | |
|         Plaintiffs      ) | C.A. No. 06-226 Erie |
|                ) | |
| v.                        ) | **District Judge McLaughlin** |
|                ) | **Magistrate Judge Baxter** |
| RIDGWAY SCHOOL DISTRICT, et al.,  ) | |
|         Defendants   ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that:

    1.    The Motion to Dismiss filed on behalf of Defendant Richard A. Masson [Document # 8] be granted; and

    2.    The Motion to Dismiss filed on behalf of Defendants Ridgway School District, James Cline, Gary Elder, Karen Scull, and William Connelly [Document # 20] be granted.

**II.   REPORT**

    **A.   Relevant Procedural and Factual History**

On October 2, 2006, this *pro se* civil rights action was instituted by Plaintiff Robert A. Stowman, Jr., on behalf of himself and his two minor children, Robert A. Stowman, III, and Samantha N. Stowman, pursuant to 42 U.S.C. § 1983. Named as Defendants are: Ridgway School District ("Ridgway"); Gary Elder, former Superintendent of Ridgway ("Elder"); Karen Scull, Assistant to the Superintendent of Ridgway's special education program ("Skull"); David S. Pontzer, Esquire, Solicitor for Ridgway ("Pontzer"); William M. Connelly, Principal of the Ridgway's middle school ("Connelly"); James Cline, Principal of Ridgway's elementary school ("Cline"); The Honorable Richard A. Masson of the Elk County Court of Common Pleas ("Judge Masson"); and Debra A. Astori, the mother and custodial parent of the two minor Plaintiffs ("Astori").

In his Complaint, Plaintiff makes several allegations challenging: (i) the special

education placement of his son, Robert A. Stowman, III; and (ii) certain actions that have been taken by one or more of the Defendants in reliance upon a custody order that was entered by Defendant Judge Masson on December 28, 2005, regarding Plaintiff's two minor children.  In particular, Plaintiff makes the following allegations, which are set forth verbatim from Plaintiff's Complaint, in pertinent part:

> 4. On May 17, 2006, [Defendant Connelly] ... denied [Plaintiff] custody of his son for the purpose of after school tutoring.... [in] violation of [Plaintiff's] unalienable rights protected under the 14th Amendment ...
>
> 5. [Defendant Pontzer], thru correspondence with [Defendant Elder], disclosed that [Defendant Judge Masson] had communication with Elder regarding [Plaintiff's] parental rights. [Defendant Judge Masson] had no legal authority to adjudicate [Plaintiff's] parental rights outside the courtroom ...
>
> 6. [Defendant Ridgway] violated Robert A. Stowman, III's civil rights by educating him in a 'place', rather than in the least restrictive environment possible, by educating him in a separate room.  [Defendant Ridgway] did so by fraudulently maintaining him in an IEP program absent proper criterion needed for enrollment.
>
> 7. [Defendant Ridgway], after Robert A. Stowman, III willingly informed his ... IEP teacher ... that he did not live in the Ridgway School District, refused to take action [to remove him from the IEP program].
>
> 8. [Defendant Ridgway] has been receiving federal funding fraudulently for the past three years by maintaining the enrollment of Robert A. Stowman, III in their [sic] IEP program; a non-resident of [Ridgway].
>
>       \*    \*    \*
>
> 10. [Defendant Astori], via the use [of] a falsified Pennsylvania driver's license, enrolled both minor children in [Ridgway], despite the fact that they were not residents.... [Defendants Ridgway and Connelly] conspired with [Defendant Astori], by refusing to question children, investigate, document and/or enforce the residency school policy, despite [Plaintiff's] request.
>
> 11. [Defendant Pontzer], maliciously and deliberately, advised [Defendant Ridgway] that paragraph G of an Order adjudicating [minor] Plaintiffs' [paternal] grandparent's rights, that [Plaintiff] had 'no' rights, when the Order clearly spoke of [Plaintiff's] independent custodial rights.

>    12. On May 17, 2006, [Defendant Cline] violated [Plaintiff's] civil rights by denying [him] custody of his daughter, Samantha N. Stowman, absent any restrictive court orders.

As relief for his claims, Plaintiff seeks injunctive relief, including: (i) the immediate removal of Robert A. Stowman, III from all IEP classes; (ii) prohibiting Defendant Ridgway from denying Plaintiff access to his children; (iii) mandating that Defendant Ridgway enforce its residency and enrollment policy; (iv) mandating that Defendant Ridgway investigate the residency of the minor Plaintiffs, with the intent of removing them from the school district; and (v) an investigation of Defendant Ridgway for fraudulent use of educational federal funding.

Defendant Judge Masson has filed a motion to dismiss [Document # 8], arguing that: (i) to the extent Plaintiff's claims challenge the state custody order dated December 28, 2005, this Court lacks subject matter jurisdiction to hear such claims pursuant to the Rooker-Feldman doctrine; and (ii) since Plaintiff can still seek relief in state court, this Court should abstain from considering Plaintiff's claims. Defendants Ridgway, Elder, Scull, Connelly, and Cline have also filed a motion to dismiss [Document # 20], contending that: (i) this Court lacks jurisdiction under the Rooker-Feldman doctrine; (ii) Plaintiff has failed to exhaust his administrative remedies with regard to his claims challenging the educational placement of his son; and (iii) Plaintiff fails to state a claim for violation of his liberty interest in the custody of his children. Plaintiff has filed a response to both motions essentially restating the allegations of his Complaint. This matter is now ripe for consideration.[1]

---

[1] According to the docket entries in this case, Defendant Astori was served with the Complaint on January 4, 2007, while Defendant Pontzer was served on or about November 13, 2006; however, neither Defendant has filed an Answer or other responsive pleading, nor has an attorney entered an appearance on behalf of either Defendant. Thus, the claims against these Defendants will not be considered.

**B.      Standards of Review**

   **1.      Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.

   **2.      *Pro Se* Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a

prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### C.      Discussion
#### 1.      IEP Program Claims

Plaintiff makes, essentially, two claims challenging his son's placement in Defendant Ridgway's IEP program. First, Plaintiff claims that his son is not a resident of Ridgway and is, thus, ineligible for Ridgway's IEP program. (Complaint at ¶¶ 6, 7, 8, 10). Second, Plaintiff objects to his son being educated in a separate room under the IEP program, rather than in the "least restrictive environment possible." (Complaint at ¶ 6). As a result, Plaintiff seeks the removal of his son from the IEP program, and requests an investigation into Defendant Ridgway's admission standards and use of federal funding in connection with its IEP program.

Plaintiff's claims in this regard are governed exclusively by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, which provides a judicial remedy for violations of any right "relating to the identification, evaluation, or educational placement of [a] child [with disabilities], or the provision of a free appropriate public education to such child. 20 U.S.C. § 1415(b)(6).[2] However, these claims have been brought as civil rights claims under

---

[2]

In particular, 20 U.S.C. § 1415(k)(3)(B)(ii) provides, in pertinent part, that
> ... the hearing officer may order a change in placement of a child with a disability. In such situations, the hearing officer may - -
>> (I) return a child with a disability to the placement from which the child was removed; or
>> (II) order a change in placement of a child with a disability to an appropriate interim

5

42 U.S.C. § 1983, rather than as direct claims under the IDEA.

Recently, the Third Circuit Court of Appeals was presented with a § 1983 action challenging a violation of a statutory right under the IDEA, and concluded that "Congress did not intend § 1983 to be available to remedy [statutory] violations of the IDEA such as those alleged by [Plaintiff]." A.W. v. The Jersey City Public Schools, ___ F.3d ___, 2007 WL 1500335 at * 10 (3d Cir. May 24, 2007). As a result, the Appellate Court found that the plaintiff in that case had "not alleged an actionable violation of his rights under the IDEA..." (Id. at * 12). The same holds true here. Since Plaintiff has no private right of action under § 1983 to enforce his statutory rights under the IDEA, his claims regarding Defendant Ridgway's IEP program should be dismissed.

### 2.     Custody/Parental Rights Claims

The remaining claims made by Plaintiff may be categorized as custody/parental right claims. In particular, Plaintiff claims that Defendant Connelly denied him custody of his son, Robert A. Stowman, III, for the purpose of after school tutoring; Defendant Judge Masson "had communication with [Defendant] Elder regarding [Plaintiff's] parental rights;" and Defendant Cline denied him custody of his daughter, Samantha N. Stowman, "absent any restrictive court orders." (Complaint at ¶¶ 4, 5 and 12). Each of these claims revolves around the Defendants' interpretation of Defendant Judge Masson's custody order, dated December 28, 2005, in which split custody of the minor Plaintiffs was awarded to their paternal grandfather, Robert A. Stowman, and their mother, Defendant Astori. (Complaint, Exhibit B). Although Plaintiff was present at the custody conference that was held before Defendant Judge Masson on or about December 28, 2005, and Plaintiff was added as a party Defendant to the state custody action on September 15, 2006, Plaintiff was not awarded any custody or visitation rights regarding his

---

alternative educational setting for not more than 45 school days if the hearing officer determines that maintaining the current placement of such child is substantially likely to result in injury to the child or to others.

6

minor children. (Complaint, Exhibit B; Document # 24, Plaintiff's Response, Exhibit 3 at p. 2). Instead, the order stated that "[t]he parties further agree that if the children's father asserts independent custodial rights to physical custody of the children, this matter shall be revisited." (Complaint, Exhibit B at p. 2, ¶ G).

As relief for his custody/parental rights claims, Plaintiff seeks an order prohibiting Defendant Ridgway "from denying [him] access to his children, absent a court order restricting him otherwise." (Complaint at p. 5, ¶ B).  However, under the Rooker-Feldman Doctrine,[3] federal courts are prohibited "from exercising 'subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding.'" Ernst v. Child and Youth Services of Chester County, 108 F.3d 486, 491 (3d Cir. 1997), cert. denied, 522 U.S. 850, 118 S.Ct. 139 (1997)(quoting FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996))(internal citations omitted).

In order to grant the relief sought by Plaintiff, a determination that the state court judgment was erroneous must occur, and in particular, the relief requested by Plaintiff would render the state court decision "ineffectual."  This the Court cannot do. Rooker, 263 U.S. at 415-16 (1923); see also Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 281 (2005) (affirming that Rooker- Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments").

Furthermore, this Court is precluded from granting the relief Plaintiff seeks by the domestic relations exception to federal jurisdiction, which "divests federal courts of the power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703

---

[3] This doctrine arises out of the decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983).

(1992); see also In re Burrus, 136 U.S. 586, 594 (1890)("[a]s to the right to the control and possession of [a] child, ... it is one in regard to which neither the Congress of the United States nor any authority of the United States has any special jurisdiction").

Based on the foregoing, therefore, this Court lacks subject matter jurisdiction to consider Plaintiff's custody/parental right claims, and such claims should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1. The Motion to Dismiss filed on behalf of Defendant Richard A. Masson [Document # 8] be granted; and

2. The Motion to Dismiss filed on behalf of Defendants Ridgway School District, James Cline, Gary Elder, Karen Scull, and William Connelly [Document # 20] be granted.

The only claims that should remain pending in this case are Plaintiff's claims against Defendants Astori and Pontzer, who have not responded to the Complaint.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                       S/Susan Paradise Baxter
                                       SUSAN PARADISE BAXTER
                                       Chief U.S. Magistrate Judge

Dated: May 31, 2007

cc:    The Honorable Sean J. McLaughlin
       United States District Judge